In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-2132, 99-3737 & 00-1247

J&W Fence Supply Company, Inc.,
John B. Vidrine, and Cressville Vidrine,

Plaintiffs-Appellants,

v.

United States of America,

Defendant-Appellee.

Appeals from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP 97-128-C Y/S--Richard L. Young, Judge.

Argued September 20, 2000--Decided October 11, 2000

Before Coffey, Easterbrook, and Evans, Circuit Judges.

Easterbrook, Circuit Judge.  On its tax return for
1992 J&W Fence Supply Company took a deduction of
almost $1 million for a bad debt: a loan to
Cherry Point Forest Products, one of J&W's
principal suppliers of raw materials (and 49% of
whose stock was owned by John Vidrine, who also
owns 100% of J&W's stock). During 1992 Cherry
Point entered receivership in Washington, and J&W
contended that it was unlikely to see much if any
of the money it had invested. But following an
audit the IRS disallowed the deduction, with this
explanation by its Appeals Office:

The bad debts deduction of $959,736.00 as shown
on your tax return is reduced by $934,217.00
because the bad debt deducted for Cherry Point in
that amount is not allowable as a business bad
debt and as a non-business bad debt has not been
determined to be worthless in this tax year. Also
as a non-business bad debt the deduction would be
a distributive item in the year it is determined
to be worthless and would be distributed as a
short term capital loss to the shareholders.
Therefore, your taxable income is increased by
$934,217.00 for 1992.

J&W is a Subchapter S corporation; its gains and
losses are passed through to its shareholders,
whose personal taxes are at issue. Vidrine paid
the assessed taxes and filed this refund action,

where the IRS altered its position. Instead of defending the administrative decision that the loan was a "non-business" debt, that the loan had not been shown to be worthless by the end of 1992 (the receivership was ongoing at year's end), and implicitly that Vidrine could not benefit from a short-term capital loss in 1992, the United States contended that J&W supplied the $1 million to Cherry Point as equity rather than debt capital.

One possible response by the taxpayers would have been that the choice between debt and equity lacks significance: wiped-out equity generates a capital loss, just as a non-business bad debt does. 26 U.S.C. sec.166(a)(1). (A business bad debt, by contrast, may be deducted from ordinary income.) Another response might have been that the money was indeed debt rather than equity capital for Cherry Point. The IRS contends that the investment must be deemed equity because the parties did not create the usual documents (principally notes specifying rates of interest and repayment schedules) that accompany loans. But one could equally say that the investment must be deemed debt because the parties did not create the usual documents (principally shares of stock with related deals, such as buy-sell agreements customary in closely held corporations) that accompany equity. If the $1 million was equity, then Vidrine owned not 49% but more than 95% of Cherry Point's stock, and this change of control should have been accompanied by many other adjustments that the corporate records do not reflect. Thus it is hazardous to say, as the United States does, that an investment must be equity because it is not documented as debt; lack of documentation does not help us choose. (Cases such as Frierdich v. CIR, 925 F.2d 180, 182-84 (7th Cir. 1991), and Roth Steel Tube Co. v. CIR, 800 F.2d 625 (6th Cir. 1986), that make much of missing documentation do not consider the mirror image of the inference.) J&W Fence Supply, which as a Subchapter S corporation had to use the accrual method of accounting, booked (and caused Vidrine to pay taxes on) interest due from Cherry Point, even though it never received a penny; by putting money behind the characterization of the transaction as debt, J&W made its claim more believable. But this subject was not litigated in the district court, and we discuss it no further.

Pursuing none of the options we have mentioned, plaintiffs contended only that the choice between debt and equity had been settled by the Washington receivership. The receiver treated the investment as a bona fide debt and distributed Cherry Point's assets accordingly, notifying all creditors that he was doing this. One of Cherry

Point's creditors was the IRS. Federal courts give the decisions of state courts the same preclusive effect that state courts themselves afford, see 28 U.S.C. sec.1738, and Vidrine contended that state courts in Washington would apply issue preclusion (collateral estoppel) to the receiver's decision. The district court disagreed and entered judgment for the United States. 1999 U.S. Dist. Lexis 4035, 99-1 U.S. Tax Cas. para.50,396, 83 A.F.T.R. 2d 1542 (S.D. Ind. 1999). At this point the taxpayers' lawyer appears to have realized that he had missed a turn, because a capital-loss deduction would have been available (though not necessarily in 1992) whether or not the investment was treated as equity. By a motion under Fed. R. Civ. P. 60(b) Vidrine asked the district court to reopen the case and direct the IRS to recognize a capital loss deduction in 1992. The judge declined, observing that the request came too late. 1999 U.S. Dist. Lexis 20309, 85 A.F.T.R. 2d 337 (S.D. Ind. 1999).

Plaintiffs' principal argument in this court is that the district judge should have granted their post-judgment motion, because they are entitled to some deduction no matter how the investment is characterized. Appellate review of decisions under Rule 60(b) is deferential, as it must be if litigants are to be induced to present their arguments before rather than after judgment. See Metlyn Realty Corp. v. Esmark, Inc., 763 F.2d 826, 831-32 (7th Cir. 1985). No abuse of discretion is apparent on this record, given plaintiffs' delay. What is more, the taxpayers' appellate brief does not discuss the tax situation for 1993, when the debt may finally have become worthless. See 26 U.S.C. sec.166(d). In the district court plaintiffs contested their taxes for both 1992 and 1993; in this court, however, 1993 has fallen by the wayside. By insisting on a deduction for 1992 only, plaintiffs have abandoned more than one avenue of reducing their taxes.

We add that the district judge did not err in deciding the preclusion issue against the taxpayers. No state judge addressed the choice between debt and equity; the subject was resolved, to creditors' apparent satisfaction, by the receiver. Nor did the IRS suffer a defeat, even if the receiver's decision could be equated to a judicial one. All but $2,400 of the $55,000 in federal tax claims had priority over both debt and equity interests in Cherry Point. It would have been silly for the IRS to demand litigation of a subject that could affect no more than $2,400 (and would not assure payment of even that small sum, but would just decrease the size of the total debt claims to be satisfied from

dwindling assets). No Washington case of which we are aware holds that a litigant is bound by the decision concerning a subject that is contested, if at all, only by other participants in the case. Like the district court, we are convinced that Washington would not deem the receiver's choice conclusive against federal tax collectors. See Bar v. Day, 879 P.2d 912, 925 (Wash. 1994). Whether these investments should be deemed debt or equity as an original matter is a subject we need not address, given plaintiffs' litigating choices in the district court.

Affirmed