**CERAND & COMPANY, INCORPORATED, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Appellee.**

No. 99–1252.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 4, 2000.

Decided July 6, 2001.

Michael S. Fried argued the cause and filed the brief for appellant.

Joel McElvain, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was Kenneth L. Greene, Attorney. David E. Carmack, Attorney, entered an appearance.

Before: WILLIAMS, GINSBURG and GARLAND, Circuit Judges.

GINSBURG, Circuit Judge:

Cerand & Co., Inc. (Cerand) appeals from a judgment of the tax court predicated upon that court's conclusion that payments Cerand made to three of its sister corporations were intended to be capital contributions rather than loans. We hold that the tax court erred in failing to consider the fact seemingly most probative of the proper classification of the payments — that the taxpayer over several years treated as taxable interest income more than $175,000 it received from its sister corporations. Accordingly, we remand this matter to the tax court for further consideration.

## Background

Gerard Cerand is the president and sole shareholder of Cerand, which provides consulting services to owners and operators of airport parking lots. Many of the airports at which Cerand provides services are small and are not served by regularly scheduled flights. In order to facilitate travel to those airports, Gerard Cerand in 1984 formed three new corporations: Cerand Aviation (CAI), which provided charter flights both to Cerand and to unaffiliated clients; Airport Service Corporation (ASC), which provided aviation support services to CAI; and First World Corporation (FWC), which provided administrative services both to CAI and to ASC.

Between 1984 and 1991 Cerand transferred $1,413,374 to its three sister corporations through an "open account receivable" it maintained for each one. Cerand did not draw up a formal document describing the nature and terms of the transfer. Over the years 1984 to 1990 the three corporations made occasional payments to Cerand, totaling $414,220. Of this amount, Cerand reported $175,662 as interest income on its federal income tax returns.

CAI and ASC went out of business in 1990 and FWC followed suit in 1991. In 1992 Cerand recovered the single valuable asset owned by any of them — a key man insurance policy on the life of Gerard Cerand, held by FWC and valued at $160,859. In 1990 and 1991 Cerand claimed bad debt losses of $223,591 and $851,274, respectively, on its federal income taxes, and deducted those amounts from its ordinary income. The Commissioner of Internal Revenue issued a notice of deficiency based upon his conclusion that the initial transfers from Cerand to its sister corporations were capital contributions rather than loans; that would entitle Cerand to deduct the losses only from capital gains, if any, and not from ordinary income. Cerand filed a petition in tax court challenging the deficiencies.

The tax court, after a trial and briefing, stated that, in determining whether the transfers were loans or capital contributions, "[t]he ultimate question is whether there was a genuine intention to create a debt, with a reasonable expectation of repayment." 76 T.C.M. (CCH) 933, 935 (1998). The court then examined three

groups of factors — relating to the original transfers, to the subsequent repayments, and to the objective likelihood of repayment — that might bear upon the nature of the payments.

The tax court first determined that the factors relating to the original transfers did not support Cerand's claim that the transactions were loans: "Petitioner never used any certificate or instrument to memorialize the debt; no loan agreements or notes were ever signed. Nor did petitioner set a fixed maturity date or repayment schedule .... [or] show that a predetermined interest rate applied." *Id.* The tax court next concluded that the factors relating to repayment also indicated that the transactions were not loans: "The repayment to petitioner was inconsistent and appeared dependent on financial success." *Id.* Finally, the court found that the objective likelihood of repayment was low: "With thin capitalization and no historical success, there was considerable risk in advancing the funds." *Id.* Accordingly, the tax court concluded that Cerand had intended that the original transfers be capital contributions, and it sustained the notice of deficiency.

Cerand filed a motion to reconsider the judgment, arguing first that the transfers were loans and, second, that if they were capital contributions, then the court nonetheless should have allowed Cerand to take all the claimed deductions from ordinary income under § 165(g)(3) of the Internal Revenue Code (IRC). Cerand also moved, in the alternative, to amend the decision in order to allow a partial deduction against ordinary income based upon a concession the Commissioner had made at trial. The tax court rejected Cerand's two arguments for reconsideration but amended the judgment as requested to reflect the Commissioner's concession. Cerand appealed to this court.

## II. Analysis

Cerand raises two arguments on appeal. First, Cerand argues that the tax court erred in concluding that the payments were capital contributions rather than loans. Second, Cerand argues that the tax court erred in refusing to consider its argument that, if the payments were capital contributions, then Cerand was nonetheless entitled to deduct them from ordinary income as "worthless securities" under IRC § 165(g)(3).

■ The Commissioner contends that Cerand first raised the § 165(g)(3) argument in its motion for reconsideration. In response Cerand states that its expert witness raised the issue in his report at trial, but it does not controvert the Commissioner's statement that, when the court excluded that portion of the expert's report because it was purely legal argument, "[t]he court specifically informed taxpayer [ ] that the exclusion ... did not prevent taxpayer from presenting the argument in its post-trial brief. Despite this invitation ... taxpayer did not [do so]."

The tax court's practice is not to consider an argument raised for the first time in a motion for reconsideration, *see, e.g., Estate of Quick v. Commissioner,* 110 T.C. 440, 441–42, 1998 WL 341635 (1998), and Cerand presents no reason for us to override that rule. Therefore, we shall not pass upon Cerand's argument from § 165(g)(3).

■ With respect to Cerand's primary argument, we note a split in the circuits over the standard of review: Should the tax court's conclusion that a taxpayer intended a payment as debt or equity be reviewed as a question of fact or of law? The Ninth and Sixth Circuits say the issue is one of fact, to be reviewed for clear error, *see, e.g., Bauer v. Commissioner,*

748 F.2d 1365, 1367 (9th Cir.1984); *Smith v. Commissioner,* 370 F.2d 178, 180 (6th Cir.1966), but the Fifth Circuit says the issue is one of law, to be reviewed *de novo. See Estate of Mixon v. United States,* 464 F.2d 394, 402–03 (5th Cir.1972).

"The [Supreme] Court has long noted the difficulty of distinguishing between legal and factual issues." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 401, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (citing *Pullman-Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)). This recurrent difficulty arises in the present case because whether a transaction is properly characterized as debt or equity, like the question at issue in *Cooter & Gell,* requires the court "to marshal the pertinent facts and apply [a] fact-dependent legal standard." *Cooter & Gell,* 496 U.S. at 402, 110 S.Ct. 2447. In part because "[f]act-bound resolutions cannot be made uniform through appellate review, de novo or otherwise," *id.* at 405, 110 S.Ct. 2447 (quoting *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 936 (7th Cir. 1989)), and in part because the district court is better positioned to make the relevant factual determinations, the Supreme Court in *Cooter & Gell* concluded that the appropriate standard of review was for abuse of discretion, with the appellate court reversing a ruling if that ruling was "based .. on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.*

█ In the present case, we hold that the tax court abused its discretion in assessing the evidence. The critical flaw in the tax court's analysis is its failure, despite the taxpayer having pressed the point, to consider Cerand's contemporaneous treatment of sums received from its sister corporations as in part the payment of "interest," taxable as income to Cerand. Over a period of several years, Cerand received $414,220 from the three corporations, of which it booked more than $175,000 as interest income. Even though Cerand had taxable income in only two of the years in question (1986 and 1987), treatment of the repayments as income in other years reduced the amount of the net operating loss Cerand could carry forward into years when it had taxable income.

Although the tax court abused its discretion by omitting from its analysis a highly significant bit of evidence, we cannot say that, had the court properly weighed this evidence, it necessarily would have reached a different conclusion, because we do not know what weight it assigned to the other evidence. Therefore, we remand this case for the tax court to weigh all the evidence in the first instance.*

### III. Conclusion

The appeal is granted and the case is remanded to the tax court for further proceedings consistent with this opinion.

*So ordered.*

* We also note that the tax court placed considerable weight upon the lack of documentation indicating that the transfers of funds from Cerand to its sister corporations were loans. Because there were no documents recording the transfers there necessarily were no stated maturity dates, no repayment schedules, and no set interest rates. As the Seventh Circuit recently observed in similar circumstances, "it is hazardous to say ... that an investment must be equity because it is not documented as debt; lack of documentation does not ... p us choose." *J & W Fence Supply Co. v. United States,* 230 F.3d 896, 898 (2000). Cerand does not raise this argument, however, and we therefore do not consider it.