T.C. Memo. 2007-331

UNITED STATES TAX COURT

RONALD E. BYERS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11606-05.                    Filed November 5, 2007.

Ronald E. Byers, pro se.

<u>Kristin M. Timmons</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income and self-employment taxes and additions to tax as follows:

|       |            | Additions to Tax |           |
| Year  | Deficiency | Sec. 6651(a)(1)  | Sec. 6654 |
|-------|------------|------------------|-----------|
| 1999  | $ 7,921    | $1,980           | $    12   |
| 2000  | 25,179     | 6,294            | 1,344     |
| 2001  | 13,601     | 3,400            | 543       |
| 2002  | 11,571     | 2,892            | 386       |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The primary issues for decision are the amount of petitioner's 1999, 2000, 2001, and 2002 income, whether petitioner is liable for self-employment taxes on the income, and whether petitioner is liable for the additions to tax determined by respondent.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioner resided in Wayzata, Minnesota.

In 1999, petitioner applied for and received a commercial driver's license. Shortly thereafter, petitioner answered an advertisement placed by Edina Couriers, Inc. (ECI), for truck drivers.

ECI operated a delivery service based in Minneapolis, Minnesota, offering deliveries by bicycle, car, and truck.

On June 9, 1999, petitioner entered into a written "Contractor Operating Agreement" (operating agreement) with ECI under which petitioner agreed to be a truck driver for ECI, picking up and delivering goods to and from ECI customers. For his services, petitioner was to be paid by ECI 70 percent of the gross amounts ECI billed its customers relating to deliveries made by petitioner.

As ECI received orders from customers, ECI used a dispatch center to coordinate and to assign to the truck drivers the pickups and deliveries. Truck drivers who wished to work on a particular day reported to ECI's dispatch center their availability--usually for approximately 10 hours at a time. Throughout the day, truck drivers kept in contact with the ECI dispatch center using cell phones and pagers.

Usually, truck drivers determined for themselves which routes to take and in what order to make pickups and deliveries for ECI.

As indicated, because ECI truck drivers[1] were not paid a set wage but rather a percentage of the gross dollar amounts ECI

---

[1] References herein to ECI truck drivers is for convenience only and is not intended to suggest an employment relationship between Edina Couriers, Inc. (ECI), and the truck drivers.

billed its customers, each day ECI truck drivers earned more the more deliveries they made.

ECI truck drivers did not bill ECI's customers, did not receive payments from customers, and did not involve themselves in collection problems when customers failed to pay ECI for deliveries.

Under the operating agreements, truck drivers could terminate their contract with ECI with 30 days' notice. In practice, ECI allowed truck drivers to quit immediately without giving advance notice.

Truck drivers with ECI did not accrue paid sick or vacation leave or health or pension benefits.

Under the ECI operating agreements, truck drivers were not precluded from making deliveries for companies other than ECI, and typically truck drivers at their discretion could choose to work or not work on any particular day without affecting their status with ECI.

ECI did not provide trucks for the truck drivers to make deliveries. Most of the ECI truck drivers owned their own trucks outright or leased trucks through a company not related to ECI. However, some truck drivers, including petitioner, leased trucks from Conrad Companies, Inc. (CCI), a company related to ECI. Also, truck drivers could lease from CCI cell phones and pagers and could purchase from ECI work clothes.

Whether the trucks were owned or leased by the drivers, ECI did not pay the truck drivers for fuel, insurance, or maintenance costs of the trucks. If truck drivers leased trucks from CCI to make deliveries, CCI provided tools and other equipment (such as pallet jacks) for the purpose of making ECI deliveries, and CCI also paid the fuel, insurance, and maintenance costs for the leased trucks. In return, the truck drivers who leased trucks from CCI owed CCI monthly lease payments on the trucks equal to approximately 55 percent of the amounts ECI owed the truck drivers for deliveries.

Under a typical lease agreement with CCI, a particular CCI truck might be used by different truck drivers within a 24-hour period.

Generally, trucks leased from CCI were required to be parked overnight on ECI property, and trucks owned by the truck drivers and trucks leased by the truck drivers from a company other than CCI were not to be parked overnight on ECI property.

ECI treated the truck drivers, including petitioner, as independent contractors. The June 9, 1999, operating agreement that petitioner entered into with ECI referred to petitioner as an independent contractor. For example, clause nine of the operating agreement provided as follows:

> 9. Independent Contractor Relationship. [Petitioner] agrees and understands that the relationship created by this Agreement between himself and ECI is solely one wherein [petitioner] * * * is an

independent contractor and that [petitioner] * * * or any drivers furnished pursuant to the terms hereof will not be employees of ECI. [Petitioner] * * * agrees to be responsible for any wages due said drivers, the withholding or any taxes, social security payments or other similar salary deductions. * * *

During the years in issue, twice a month petitioner received settlement reports from ECI reflecting petitioner's gross earnings. The settlement reports also reflected deductions for the truck lease payments petitioner owed to CCI that were deducted from petitioner's ECI earnings and remitted by ECI to CCI.

During some of the years in issue, petitioner also oversaw CCI vehicles parked overnight on ECI's property, and petitioner, at ECI's request, provided training to new truck drivers. For these services, petitioner received additional earnings from CCI and from ECI, respectively.

During the years in issue, petitioner maintained in his own name two credit card accounts and one personal bank line of credit, and petitioner maintained in his own name and in the name of his wife Deanna L. Byers a joint personal checking account.[2]

Neither ECI nor CCI ever withheld from petitioner's earnings Federal or State income or employment taxes, and no deduction for

---

[2] One of petitioner's credit cards indicates a payment to "We the People", a tax protester organization discussed in United States v. Simkanin, 420 F.3d 397, 400-401 (5th Cir. 2005), and in United States v. Schulz, 100 AFTR 2d 2007-5538, 2007-2 USTC par. 50,619 (N.D.N.Y. 2007).

Federal or State income tax withholding was ever shown on the settlement reports that petitioner received from ECI.

For each year in issue, ECI submitted to respondent and to petitioner Forms 1099-MISC, Miscellaneous Income, reflecting for each year petitioner's cumulative gross earnings that ECI had reflected on the settlement reports for each year and not reflecting earnings petitioner received for training truck drivers.

None of the earnings petitioner received from ECI were reported to respondent on a Form W-2, Wage and Tax Statement.

CCI did not submit to respondent or to petitioner Forms 1099 relating to petitioner's compensation for oversight of CCI vehicles.

For the years in issue, petitioner's annual gross earnings from driving trucks as reflected on the Forms 1099 ECI submitted, the amounts deducted by ECI and remitted to CCI for truck lease payments, and the difference between the two are as follows:

| Year | Gross Earnings | Truck Lease Payments | Difference |
|------|----------------|----------------------|------------|
| 1999 | $49,814 | $25,900 | $22,914 |
| 2000 | 97,984 | 52,911 | 45,073 |
| 2001 | 85,163 | 46,029 | 39,134 |
| 2002 | 84,667 | 45,961 | 38,706 |

During the years in issue, petitioner never requested from ECI a Form W-2, and petitioner never objected to ECI's use of Forms 1099 to report to respondent petitioner's gross earnings.

For 1999 through 2002, petitioner did not make estimated Federal income tax payments to respondent, and petitioner did not file Federal income tax returns.

On audit, respondent treated petitioner as an independent contractor of ECI, determined petitioner's income and deductions relating to petitioner's truck driving activity, and determined petitioner's taxable income and petitioner's income and self-employment taxes.

In respondent's determination of petitioner's income, respondent utilized the Forms 1099 ECI had submitted, and respondent allowed business expense deductions for petitioner's truck lease payments to CCI. Respondent also analyzed petitioner's bank accounts and concluded that significant additional unexplained funds had been deposited into petitioner's bank account, which unexplained funds respondent treated as additional taxable income relating to petitioner's work for ECI and CCI. Petitioner's taxable income as determined by respondent is set forth below:

|  | Respondent's Determination of |
| Year | Petitioner's Taxable Income |
| 1999 | $31,129 |
| 2000 | 73,650 |
| 2001 | 46,804 |
| 2002 | 42,171 |

Respondent treated petitioner as married filing separately, allowed petitioner a standard deduction, and respondent determined the tax deficiencies (which includes self-employment taxes) and the additions to tax at issue herein.

OPINION

Section 61(a) defines gross income as "all income from whatever source derived," including earnings for services and gross income derived from business. Sec. 61(a)(1) and (2).

Generally, taxpayers who receive income in a year equal to or in excess of the exemption amount (i.e., $2,000 as adjusted for inflation for 1999, 2000, 2001, and 2002) are required to file Federal income tax returns. Secs. 151(d) and 6012(a)(1)(A), (D)(ii).

Petitioner agrees that he received income in amounts of at least $22,914, $45,073, $39,134, and $38,706 respectively for 1999, 2000, 2001, and 2002 (the amounts shown on the Forms 1099

less the truck lease payments), amounts far in excess of the exemption amount.[3]

Petitioner has not shown that the bank deposits charged to petitioner by respondent as additional income for the years in issue represented nontaxable income.  See Ellis v. Commissioner, T.C. Memo. 2007-207.  We sustain respondent's determination of petitioner's taxable income for 1999 through 2002, and we conclude that petitioner was required to file Federal income tax returns for 1999 through 2002 and to pay Federal income taxes.

Petitioner argues that he was an employee of ECI, that under section 3402(a)(1) employers are required to withhold Federal income taxes from employee wages, and that ECI rather than he should be held liable for payment to respondent of petitioner's unpaid Federal income and employment taxes.

However, an employer's failure to withhold from employee wages Federal income taxes does not extinguish an individual taxpayer's requirement to report income and to pay to respondent Federal income taxes.  See Church v. Commissioner, 810 F.2d 19, 20 (2d Cir. 1987); Latos v. Commissioner, T.C. Memo. 2007-265;

---

[3] At a recent Minnesota Tax Court trial to determine petitioner's liability to pay 2000 and 2001 Minnesota income taxes, petitioner refused to testify under oath and argued that he had not received from ECI any earnings in 2000 and 2001.  The Minnesota Tax Court found petitioner liable for State income tax for 2000 and 2001 based on income from petitioner's truck driving activity with ECI.  See generally Byers v. Commissioner, 2006 WL2380586 (Minn. Tax Reg. Div. Aug. 14, 2006), amended on rehg. 2006 WL3155401 (Minn. Tax Reg. Div. Nov. 2, 2006), and affd. 735 N.W.2d 671 (Minn. 2007).

Kuntz v. Commissioner, T.C. Memo. 1962-98; see also Ravelo Escandon v. Commissioner, T.C. Memo. 2007-128 (an employer's misclassification of an employee as an independent contractor does not reduce or discharge the employee's liability to pay Federal income taxes).  Further, there is no withholding requirement under section 3402 for payors of independent contractors.

Petitioner argues that amounts ECI deducted from petitioner's gross earnings as petitioner's truck lease payments and remitted to CCI should be recharacterized as Federal income tax withholdings and that respondent should credit the funds remitted by ECI to CCI against petitioner's Federal income and self-employment taxes for the years in issue.

Set forth below for each year in issue is a comparison of petitioner's truck lease payments remitted to CCI and the tax deficiencies respondent determined against petitioner:

| Year | Truck Lease Payments | Tax Deficiencies |
|------|----------------------|------------------|
| 1999 | $25,900 | $ 7,921 |
| 2000 | 52,911 | 25,179 |
| 2001 | 46,029 | 13,601 |
| 2002 | 45,961 | 11,571 |

Based on the above, petitioner argues that he owes no tax deficiencies and that respondent owes him a refund of overpaid Federal taxes for each year in the amount of the above positive

difference between the truck lease payments (that petitioner now requests be treated as tax payments) and the tax deficiencies.

An individual taxpayer, however, is not entitled to a section 31 credit toward Federal income and employment taxes for taxes not actually withheld from the individual's earnings. See United States v. Kuntz, 259 F.2d 871, 872 (2d Cir. 1958); Edwards v. Commissioner, 39 T.C. 78, 83-84 (1962), affd. on this issue 323 F.2d 751 (9th Cir. 1963).

Herein, no Federal income and self-employment taxes were withheld from petitioner's earnings, and petitioner has not cited any authority that would authorize us now to recharacterize truck lease payments to CCI as Federal income and self-employment taxes withheld from petitioner's earnings.

Petitioner's liability for self-employment taxes for the years in issue turns on whether petitioner's relationship with ECI constituted an independent contractor relationship (respondent's position) or an employment relationship (petitioner's position).

Under section 1401, self-employed taxpayers, including independent contractors, are liable for a tax on self-employment income. See Jones v. Commissioner, T.C. Memo. 2007-249; Jackson v. Commissioner, 108 T.C. 130, 133-134 (1997); Allen v. Commissioner, T.C. Memo. 2005-118; Turnidge v. Commissioner, T.C. Memo. 2003-169.

Self-employment income is defined as net earnings from self-employment.  Sec. 1402(b).  "Net earnings from self-employment" is defined as "gross income derived by an individual from any trade or business carried on by such individual".  Sec. 1402(a).

In general, services performed as an independent contractor give rise to self-employment income.  See sec. 1402(c)(2) and (3); Jackson v. Commissioner, supra at 133-134.

Generally, a taxpayer who works for another but who controls the means and methods for accomplishing the work is treated as an independent contractor.  Secs. 31.3121(d)-1(c)(2), 31.3306(i)-1(b), Employment Tax Regs.

In deciding whether a taxpayer is to be treated as an independent contractor or as an employee, we apply seven factors (see, e.g., Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 270 (2001); Peno Trucking, Inc. v. Commissioner, T.C. Memo. 2007-66; secs. 31.3121(d)-1(c)(2), 31.3306(i)-1(b), Employment Tax Regs.), as follows:

    (1) Control over manner of accomplishing work;

    (2) Investment in work facilities and tools;

    (3) Opportunity for profit or loss;

    (4) Termination of the work relationship;

    (5) Participation in service integral to regular business;

    (6) Length of the relationship; and

    (7) Intent of the parties as to the type of relationship formed.

The United States Court of Appeals for the Eighth Circuit, to which appeal of this case would lie, uses two additional factors, see Day v. Commissioner, T.C. Memo. 2000-375, as follows:

(8) Substantial cost incurred; and

(9) Special skills required.

We apply the factors as appropriate under the circumstances. Aymes v. Bonelli, 980 F.2d 857, 861 (2d Cir. 1992). No single factor is dispositive. Ewens & Miller, Inc. v. Commissioner, supra.

## Control over Manner of Accomplishing Work

Petitioner controlled the manner in which he scheduled and made pickups and deliveries without control from ECI.

This factor indicates an independent contractor relationship.

## Investment in Work Facilities and Tools

Because petitioner was required either to own or lease his own truck, tools, and other equipment, petitioner made a significant investment in his truck driving activity. Cf. Air Terminal Cab, Inc. v. United States, 478 F.2d 575, 580-581 (8th Cir. 1973).

This factor indicates an independent contractor relationship.

Opportunity for Profit or Loss

Because petitioner was paid not a fixed wage but a percentage of gross amounts billed to customers, and because the number of deliveries petitioner made depended significantly on petitioner's efficiency, petitioner had an opportunity to participate in ECI's profits. Because petitioner provided and paid for the truck and insurance, among other things, petitioner risked a net loss if his profits did not exceed his expenses.

This factor indicates an independent contractor relationship.

Termination of the Work Relationship

Under the June 1999 operating agreement, ECI and/or petitioner were to give 30 days' notice before a termination of petitioner, but ECI had a practice of allowing truck drivers to terminate without notice, if the truck drivers so desired.

We regard this factor as neutral.

Participation in Service Integral to Regular Business

Because truck drivers were an integral part of ECI's regular delivery service, petitioner participated as a truck driver in ECI's regular business for the years in issue.

This factor indicates an employment relationship.

Length of the Relationship

Because petitioner performed delivery services for ECI for almost 6 years, petitioner had a long-term relationship with ECI.

This factor indicates an employment relationship.

Parties' Intent as to Type of Relationship Formed

The June 9, 1999, operating agreement clearly states that petitioner was to be treated as an independent contractor. Because petitioner worked for years under the operating agreement and never objected to the Forms 1099 issued by ECI, the operating agreement does not in any way support petitioner's claim that an employment relationship with ECI was intended. Further, petitioner was treated by ECI as an independent contractor (i.e., no accrued paid leave, no health or pension benefits, and no wage withholding).

This factor indicates an independent contractor relationship.

Substantial Costs Incurred

Petitioner incurred substantial costs (i.e., 55 percent of reported gross earnings) to lease a truck which allowed petitioner to make deliveries to and from ECI customers.

This factor indicates an independent contractor relationship.

Special Skills Required

Outside of the skills needed to drive trucks, ECI did not require that petitioner have special skills. See Day v. Commissioner, T.C. Memo. 2000-375.

This factor indicates an employment relationship.

Of the nine factors, five factors indicate an independent contractor relationship, three factors indicate an employee relationship, and one factor is neutral.

We conclude that petitioner is to be treated as an independent contractor for the years in issue and that petitioner is liable for self-employment taxes for each year.

Petitioner refers us to Peno Trucking, Inc. v. Commissioner, T.C. Memo. 2007-66, and to Day v. Commissioner, supra. The taxpayer employers in Peno Trucking and Day exercised a significant degree of control over driver schedules, provided free-of-charge trucks (covering fuel, maintenance, and insurance costs), tools, and other equipment, and retained a right to immediately terminate drivers. Peno Trucking and Day are distinguishable from this case.

Additions to Tax

Respondent bears the burden of production in connection with additions to tax under sections 6651(a)(1) and 6654. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Under section 6651(a)(1), a taxpayer who fails to file a Federal income tax return by the date due may be liable for an addition to tax unless the taxpayer demonstrates reasonable cause and not willful neglect.

Generally, a taxpayer who is required to pay but who significantly underpays estimated Federal income taxes shall be liable for an addition to tax.  Sec. 6654(a).

Petitioner admits that he had no reasonable cause for his failure to file Federal income tax returns for the years in issue.  We sustain respondent's determination of section 6651(a)(1) failure to file additions to tax and section 6654 estimated tax additions to tax against petitioner for 1999, 2000, 2001, and 2002.

We have considered all arguments made herein, and, to the extent not addressed, we conclude that they are without merit or are irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.