# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 25, 2013      Decided January 17, 2014

No. 12-1351

RONALD E. BYERS,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

On Appeal from Orders and
Decisions of the United States Tax Court

*Ronald E. Byers*, pro se, argued the cause and filed the briefs for appellant.

*Carlton M. Smith* and *Frank Agostino* were on the brief for *amici curiae* Peter Kuretski, et al. in support of appellant.

*Teresa E. McLaughlin*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Marion E.M. Erickson*, Attorney, U.S. Department of Justice.

Before: TATEL and BROWN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Appellant Ronald Byers seeks review of orders and decisions issued by the United States Tax Court affirming a decision by the Internal Revenue Service ("IRS"). The disputed IRS decision imposed a levy on Appellant's property to collect overdue income taxes for the tax years 1999-2002.

Appellant does not seek review of the amount of the taxes he owes. Rather, he raises a number of procedural and substantive challenges emanating from an IRS Office of Appeals Collection Due Process ("CDP") hearing which resulted in the contested levy. The IRS has moved for a change of venue, arguing that this appeal should be transferred to the United States Court of Appeals for the Eighth Circuit, where venue properly lies. Appellant responds that venue is proper here under 26 U.S.C. § 7482(b)(1) because he is not seeking a *redetermination* of the amount of his taxes. In support of his claim, Appellant points the court to an illuminating article, James Bamberg, *A Different Point of Venue: The Plainer Meaning of Section 7482(b)(1)*, 61 TAX LAW. 445 (2008), in which the author contends that

> [a] plain meaning reading of the [statute] instructs that the D.C. Circuit Court is the appropriate venue, the default even, for all tax cases on appeal from the Tax Court that are not expressly brought up in section 7482(b)(1). Thus, it would appear that cases dealing with . . . "collection due process" hearings . . . should all be appealed to the D.C. Circuit Court.

*Id*. at 456-57. We agree and therefore deny the Commissioner's motion to transfer this case to the Eighth Circuit.

On the merits, Appellant principally argues that the Tax Court should be reversed because: (1) the CDP Settlement Officer engaged in improper *ex parte* communications and thus conducted Appellant's CDP hearing arbitrarily and unfairly; (2) Senior Judge Stephen J. Swift of the Tax Court erred in denying Appellant's request that he recuse himself from ruling on Appellant's Appointments Clause challenge to the ability of the Chief Judge to recall Senior Judges to decide cases before the Tax Court; (3) the Tax Court erred in dismissing as moot the collection of Appellant's 2003 tax liability after the IRS abated the assessment for that year and indicated that it was no longer pursuing a levy based on the 2003 assessment; and (4) the Tax Court erred in upholding the levy determination after the 2003 tax assessment was no longer under consideration. Appellant also raises a number of other issues which do not warrant recitation here. After carefully reviewing all of Appellant's claims, we find no merit in any of his challenges to the contested orders and decisions of the Tax Court. We therefore affirm the judgment of the Tax Court.

## I. BACKGROUND

### A. *Tax Redeterminations and Collection Due Process Hearings*

### 1. Redetermination of Tax Assessments

When the IRS finds a discrepancy between an individual's income tax filing and records from other sources, it may use a "notice of deficiency" to inform the taxpayer that it intends to collect the difference in owed taxes. 26 C.F.R. § 301.6212-1. If a taxpayer fails to file a return, the IRS may create a substitute tax form under 26 U.S.C. § 6020(b) and file a notice of deficiency for the total amount it calculates as due.

A taxpayer who disagrees with the statement of the *amount* of taxes owed in a notice of deficiency has two

options: pay the amount assessed and then sue for a refund in federal district court or the Court of Federal Claims under 28 U.S.C. § 1346(a), or refuse to pay the tax and file a petition in Tax Court under 26 U.S.C. § 6213 for a "redetermination of the deficiency." Either of the two court proceedings may result in a *redetermination* of the *amount* of taxes owed by the taxpayer.

## 2. Collection Due Process Hearings

In addition to seeking redeterminations, taxpayers may also contest the IRS's *means* of collecting overdue taxes. The IRS can initiate a lien on a taxpayer's property, 26 U.S.C. § 6321, and impose a levy on the taxpayer's property, *id*. § 6331. In 1998, Congress established the CDP hearing process to temper "any harshness caused by allowing the IRS to levy on property without any provision for advance hearing." *Olsen v. United States*, 414 F.3d 144, 150 (1st Cir. 2005); Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 3401, 112 Stat. 685, 746 (codified at 26 U.S.C. §§ 6320, 6330). The statute requires notice to the taxpayer of a right to a hearing before a levy or lien is made and guarantees the right to a fair hearing before an impartial officer from the IRS Office of Appeals. 26 U.S.C. §§ 6320, 6330.

In a CDP hearing challenging a levy, a taxpayer may raise "any relevant issue relating to the unpaid tax or the proposed levy," including "challenges to the appropriateness of collection actions," and "offers of collection alternatives." *Id.* § 6330(c)(2)(A). The appeals officer then considers whether any proposed collection action "balances the need for the efficient collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary." *Id.* § 6330(c)(3)(C). The law also affords a taxpayer the right to appeal a CDP determination to the Tax Court. *Id.* § 6330(d)(1).

CDP proceedings are informal and may be conducted via correspondence, over the phone, or face to face. *See* 26 C.F.R. §§ 601.106(c), 301.6330-1(d). A taxpayer may challenge his underlying tax liability at a CDP hearing, but only if he "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." 26 U.S.C. § 6330(c)(2)(B).

### 3. Appellate Review of Tax Court Redetermination and Collection Due Process Decisions

Under the Internal Revenue Code, the federal courts of appeals have jurisdiction to review Tax Court redetermination and CDP decisions:

> The United States Courts of Appeals (other than the United States Court of Appeals for the Federal Circuit) shall have exclusive jurisdiction to review the decisions of the Tax Court, except as provided in section 1254 of Title 28 of the United States Code, in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury; and the judgment of any such court shall be final, except that it shall be subject to review by the Supreme Court of the United States upon certiorari, in the manner provided in section 1254 of Title 28 of the United States Code.

26 U.S.C. § 7482(a)(1).

Congress originally placed venue for all appeals from decisions issued by the U.S. Board of Tax Appeals – later renamed the U.S. Tax Court – in the regional circuits, unless the individual did not file a return. 26 U.S.C. § 1141(b)(1) (1940) (providing that "decisions may be reviewed by the Circuit Court of Appeals for the circuit in which is located the collector's office to which was made the return of the tax in respect of which the liability arises or, if no return was made, then by the United States Court of Appeals for the District of Columbia").

In 1966, Congress changed the venue provision, adding two subsections that prescribed the proper venue for appeals from Tax Court decisions concerning redetermination requests sought by individuals and by corporations. Pub. L. No. 89-713, § 3(c), 80 Stat. 1107, 1108-09 (1966) (codified at 26 U.S.C. § 7482(b)(1)(A)-(B) (1970)). For both corporations and individuals, the statute stated that the proper venue for appeals involving redeterminations of liability was the federal court of appeals for the circuit in which the taxpayer's residence was located. *Id.* However, for the appeal of any case not enumerated in subsection (A) and (B), it assigned venue to the D.C. Circuit. *Id.* In other words, in 1966, Congress deliberately made the D.C. Circuit the default venue for tax cases.

Between 1966 and 1997, as Congress continued to expand the jurisdiction of the Tax Court, it also amended § 7482(b)(1) to add four more subsections, § 7482(b)(1)(C)-(F), that established venue based on a taxpayer's residency. *See* Revenue Act of 1978, Pub. L. No. 95-600, § 336(c), 92 Stat. 2763, 2842; Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, § 1041(b), 88 Stat. 829, 950-51; Tax Reform Act of 1976, Pub. L. No. 94-455, §§ 1042(d), 1306(b), 90 Stat. 1520, 1638-39, 1719; Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 402, 96 Stat. 324, 668; Taxpayer Relief Act of 1997, Pub. L. No. 105-34, § 1239, 111 Stat. 788, 1028. After these various revisions, the D.C. Circuit remained the default venue if "for any reason no subparagraph [assigning venue to a regional circuit] applies." 26 U.S.C. § 7482(b)(1). Unlike its approach when expanding Tax Court jurisdiction to other areas, Congress did not alter the venue provision when it created the CDP framework in 1998.

The applicable provisions of the statute now read as follows:

**(b) Venue**

**(1) In general**

Except as otherwise provided in paragraphs (2) and (3), such decisions may be reviewed by the United States court of appeals for the circuit in which is located–

(A) in the case of a petitioner seeking redetermination of tax liability other than a corporation, the legal residence of the petitioner,

(B) in the case of a corporation seeking redetermination of tax liability, the principal place of business or principal office or agency of the corporation, or, if it has no principal place of business or principal office or agency in any judicial circuit, then the office to which was made the return of the tax in respect of which the liability arises,

(C) in the case of a person seeking a declaratory decision under section 7476, the principal place of business, or principal office or agency of the employer,

(D) in the case of an organization seeking a declaratory decision under section 7428, the principal office or agency of the organization,

(E) in the case of a petition under section 6226, 6228(a), 6247, or 6252, the principal place of business of the partnership, or

(F) in the case of a petition under section 6234(c)–

(i) the legal residence of the petitioner if the petitioner is not a corporation, and

(ii) the place or office applicable under subparagraph (B) if the petitioner is a corporation.

*If for any reason no subparagraph of the preceding sentence applies, then such decisions may be reviewed by the Court of Appeals for the District of Columbia.* For purposes of this paragraph, the legal residence, principal place of business, or principal office or agency referred to herein shall be determined as of the time the petition seeking redetermination of tax liability was filed with the Tax Court or as of the time the

> petition seeking a declaratory decision under section 7428 or 7476 or the petition under section 6226, 6228(a), or 6234(c), was filed with the Tax Court.
>
> **(2) By agreement**
>     Notwithstanding the provisions of paragraph (1), such decisions may be reviewed by any United States Court of Appeals which may be designated by the Secretary and the taxpayer by stipulation in writing.

26 U.S.C. § 7482(b) (emphasis added).

There is no question here regarding the Tax Court's exclusive jurisdiction over petitions for income tax redeterminations and appeals from CDP determinations. *Id.* §§ 6330(d), 6213(a), 7421. What is at issue in this case is the proper venue for appeals challenging Tax Court decisions concerning these CDP determinations.

## B.  *Proceedings Below*

Appellant is a self-employed taxpayer. In the tax years 1999 through 2002, Appellant failed to file federal tax returns. The IRS, pursuant to 26 U.S.C. § 6020(b), prepared substitute tax forms for Appellant and mailed him notices of deficiency for each year. *Byers v. Comm'r*, 103 T.C.M. (CCH) 1168 (2012). Appellant unsuccessfully challenged the amounts listed in the deficiency determinations, which were upheld in 2007 by the Tax Court. *Byers v. Comm'r*, 94 T.C.M. (CCH) 438 (2007). Because he resided in Minnesota, Appellant sought review of the Tax Court's decision in the Eighth Circuit. *See* 26 U.S.C. § 7482(b)(1)(A). That court upheld the Tax Court's deficiency determinations, *Byers v. Comm'r*, 351 F. App'x 161 (8th Cir. 2009), and the Supreme Court denied Appellant's petition for certiorari, *Byers v. Comm'r*, 131 S. Ct. 79 (2010).

The Commissioner also asserted that Appellant owed

taxes for 2003. Appellant brought a separate challenge to this determination in Tax Court. In 2010, the Tax Court concluded that it lacked jurisdiction over taxable year 2003 because no notice of deficiency was produced and because there "was no indication or evidence that one was mailed" to Appellant. Mot. to Dismiss on Ground of Mootness at 3-4, *reprinted in* Appendix ("App.") 6-7. The Commissioner did not appeal and instead abated the 2003 assessment. *Id.*

In January 2009, prior to the Tax Court's ruling as to 2003, the IRS collections department determined that Appellant was subject to tax collection by levy for liabilities (including penalties and interest) totaling $175,506.25 for the years 1999, 2000, 2001, 2002, and 2003. Final Notice of Intent to Levy, *reprinted in* App. 60-61. Appellant first challenged the levy determination with the IRS Office of Appeals via a CDP hearing. His challenge was denied. Notice of Determination Concerning Collection Action(s) under Section 6320 and/or 6330, *reprinted in* App. 52-58.

Appellant appealed to the Tax Court. After the Commissioner abated the 2003 assessment, the Commissioner moved to dismiss as moot Appellant's CDP petition with respect to taxable year 2003. Mot. to Dismiss on Ground of Mootness, *reprinted in* App. 4-8. The Tax Court granted this motion, leaving taxable years 1999-2002 in dispute. Order, *reprinted in* App. 9. The Tax Court then granted summary judgment in favor of the Commissioner. *Byers*, 103 T.C.M. (CCH) at 1170.

Appellant now seeks review in this court to overturn the orders and decisions issued by the Tax Court denying his appeal of the determination made by the IRS Office of Appeals in his CDP hearing. Appellant does not seek a redetermination of the underlying tax liabilities in this court. He merely challenges the Tax Court's decisions and orders relating to his CDP hearing. The IRS has moved to transfer venue, arguing

that 26 U.S.C. § 7482 lays venue in the Eighth Circuit, where Appellant resides.

## II. ANALYSIS

### A. *Standard of Review*

The parties' dispute over the proper interpretation of the venue provisions in 26 U.S.C. § 7482(b) "clearly raises a question of law. Therefore we address it de novo." *SEC v. Johnson*, 650 F.3d 710, 714 (D.C. Cir. 2011) (citations omitted).

We review decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482(a)(1). Thus, we apply *de novo* review to the Tax Court's determinations of law. *Andantech L.L.C. v. Comm'r*, 331 F.3d 972, 976 (D.C. Cir. 2003).

We also apply *de novo* review to decisions to grant summary judgment, applying the same standards as the district courts. *See generally* EDWARDS, ELLIOTT & LEVY, FEDERAL STANDARDS OF REVIEW 44-50 (2d ed. 2013). "Those standards are largely derived from Federal Rule of Civil Procedure 56 and the Supreme Court's seminal decisions in [*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)], and [*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).]" *Id*. at 44. As required by Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying this rule, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Liberty Lobby*, 477 U.S. at 247-48.

In a CDP case in which the merits of the underlying tax liability are not at issue, this court reviews the determinations made by the Office of Appeals for an abuse of discretion. *See, e.g.*, *Tucker v. Comm'r*, 676 F.3d 1129, 1135-37 (D.C. Cir. 2012).

**B.** *Venue*

The Internal Revenue Manual clearly states that "none of subparagraphs (A)-(F) [in 26 U.S.C. § 7482(b)(1)] expressly mentions a decision in a CDP case." IRM 36.2.5.8(1). We agree with this characterization of the statute, which makes the Commissioner's motion to transfer all the more puzzling. The statute's plain language says that, "[i]f for any reason no subparagraph of the preceding sentence applies, then [Tax Court] decisions may be reviewed by the Court of Appeals for the District of Columbia." 26 U.S.C. § 7482(b)(1). Because none of the subparagraphs expressly mentions a decision in a *CDP* case, this catch-all provision applies, and venue lies in this court. As such, venue cannot be proper in the Eighth Circuit unless the parties so stipulate in writing. *Id.* § 7482(b)(2). Appellant timely filed his appeal in this court and he has not acceded to the IRS's request to transfer the case. Therefore, venue in this court is proper.

The IRS offers several arguments in support of its claim that venue is proper only in the Eighth Circuit. As we explain below, we find no merit in these arguments.

First, the IRS urges that since CDP hearings *can* in some circumstances include "challenges" to the underlying tax liability, they can appropriately be considered "redeterminations." Br. for the Appellee at 26. Relatedly, the IRS asserts that if venue turns on whether a redetermination of a tax liability is "properly at issue," venue determinations will invariably depend on the merits of each case. *Id.* at 27. Both points miss the mark. It is true that the statutory venue

provision places appeals in the circuit of a taxpayer's residence whenever the taxpayer is "seeking redetermination of tax liability." 26 U.S.C. § 7482(b)(1)(A). However, it is clear in *this* case that Appellant is not seeking a redetermination of his tax liability.

It may be the case, as the IRS argues, that some appeals will involve challenges to Tax Court decisions concerning both redeterminations *and* collection actions. In such cases, venue may not be proper in the D.C. Circuit. But this possibility does not justify shoehorning all CDP cases into the redetermination venue provision. Just as we see in this case, it normally will be obvious from the taxpayer's statement of the issues whether an appeal involves a challenge to a redetermination decision, a CDP decision on a collection method, or both. Therefore, it will not be difficult for this court to distinguish between the two types of cases to determine whether venue is proper in the D.C. Circuit.

Second, the IRS argues that "[i]t would not be reasonable to suppose that in adopting the CDP provisions for the benefit of taxpayers, Congress intended to inconvenience them by requiring them to bring all appeals to this Court, absent stipulation by the Commissioner under § 7482(b)(2), no matter where they live." Br. for the Appellee at 29. The IRS's suppositions regarding congressional intent carry hardly any weight when the statutory provision at issue is absolutely clear. Moreover, our holding is limited to appeals challenging *only* a lien or levy determination; it does not reach an appeal contesting *both* collection action and redetermination decisions, which presumably would fall under subsection (b)(1)(A) with venue lying in a regional court of appeals. *See* 26 U.S.C. § 7482(b)(1) (assigning regional venue "*in the case of a petitioner* seeking redetermination of tax liability" (emphasis added)).

Third, the IRS asserts that if Congress meant to limit

venue to the D.C. Circuit, it would have done so explicitly. Br. for the Appellee at 30-31. This is a curious argument because the plain terms of the statute settle the issue. *See* Bamberg, *supra*, at 456-57. It is true that the regional circuits have taken venue over CDP appeals in the past, and this court has granted motions to transfer venue to other circuits. *See Robinson v. Comm'r*, No. 13-1081 (D.C. Cir. July 5, 2013); *Brown v. Comm'r*, No. 02-1012, 2002 WL 1364313 (D.C. Cir. May 13, 2002); Br. for the Appellee at 18; Br. for the Appellant at 51-52. However, the IRS has not identified – nor have we found – a decision where the venue issue addressed here was properly raised and fully addressed by a court of appeals.

Finally, the IRS argues that it is simply impractical for the D.C. Circuit to hear all non-redetermination CDP cases. Br. for the Appellee at 31-32. Our research, however, indicates that the number of published decisions from the courts of appeals involving appeals from Tax Court CDP decisions is far from overwhelming. Furthermore, it is not unreasonable to assume that, even after the issuance of our decision in this case, many taxpayers who seek review of CDP decisions will agree with the IRS to have their cases heard in a circuit other than the D.C. Circuit. In any event, Congress determines the jurisdiction and venue of this court and we have no authority to declare otherwise. *Cf. Cohens v. Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given."); *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs*, 558 U.S. 67, 71 (2009) (holding that "there is surely a starting presumption that when jurisdiction is conferred, a court may not decline to exercise it").

Most of the arguments raised by the IRS rest on the Commissioner's view that it would be illogical, inconvenient, and bad policy to apply § 7482(b)(1) as it is written and to hold that the D.C. Circuit is the appropriate venue for appeals from Tax Court CDP decisions. For example, the IRS argues that

14

> Congress expressly provided, in § 7482(b), that venue for an appeal is to be fixed at the outset of the case: the time the taxpayer files his petition in the Tax Court. Any other approach to laying venue would be at odds with this express legislative judgment. Moreover, as the various courts of appeals do not always agree, and it may take some time for the Supreme Court to resolve any conflict that develops between the Circuits, it is important for the Tax Court to apply the precedent of the Circuit to which appeal lies. And unless appellate venue is known at the outset of the case, the Tax Court will not be able to identify the Circuit with the controlling precedent that is to be followed in making its decision under its *Golsen* rule. *See Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

Br. for the Appellee at 27-28. Even if the IRS's policy argument raises a legitimate concern, this is a matter for Congress, not the courts.

The IRS's arguments "rest[] on reasoning divorced from the statutory text," which surely cannot carry the day. *Massachusetts v. EPA*, 549 U.S. 497, 532 (2007). It is well established that "when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted). Indeed, § 7482(b)(1) may be "awkward, . . . but that does not make it ambiguous on the point at issue." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). And the fact that the IRS has regularly moved to transfer venue to the regional circuits pursuant to Internal Revenue Manual, Part 36.2.5.8 is irrelevant. "[N]either . . . the [IRS] manual nor allegedly longstanding agency practice can trump . . . the force of law." *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 748

(2004).

Excluding a few exceptions that are not relevant here, the plain text of § 7482(b)(1) says that the proper venue to seek review of a Tax Court decision lies in the D.C. Circuit *unless* one of the circumstances enumerated in subparagraphs (A)-(F) applies. If the IRS believes that compliance with the statute as written will result in "undesirable consequences," then it must "take its concerns to Congress." *Friends of the Earth, Inc. v. EPA*, 446 F.3d 140, 142 (D.C. Cir. 2006). Because none of the circumstances enumerated in subparagraphs (A)-(F) are at issue in this case and the parties have not stipulated to venue in another circuit, we deny the IRS's motion to transfer this case to the Eighth Circuit.

We have no occasion to decide in this case whether a taxpayer who is seeking review of a CDP decision on a collection method may file in a court of appeals other than the D.C. Circuit if the parties have not stipulated to venue in another circuit.

**C.** *Appellant's Claims on the Merits*

**1.** *Ex Parte* **Communications**

Appellant contends that the judgment of the Tax Court should be reversed because his CDP hearing was tainted by *ex parte* communications between the Office of Appeals Settlement Officer and other IRS employees. The Tax Court rejected this claim, finding that Appellant had "presented no credible support for this claim." *Byers*, 103 T.C.M. (CCH) at 1170. The Tax Court determined that the CDP hearing record "adequately confirms" that any communications between the settlement officer and other IRS employees "related solely to administrative, ministerial, or minor procedural matters,"

which are permissible under IRS procedures. *Id.* (citing Rev. Proc. 2000-43, 2002-2 C.B. 404, 405). We can find no error.

As the IRS explains:

Under Revenue Procedure 2000-43, 2002-2 C.B. 404, Appeals and Settlement Officers are prohibited from having *ex parte* communications with other IRS employees to the extent that such communications appear to compromise their independence. Improper *ex parte* communications include discussions of the strengths and weaknesses of the issues or positions in the case. Rev. Proc. 2000-43, Q&A-6. There is no evidence whatsoever that the Settlement Officer engaged in any improper *ex parte* communications with other IRS employees in her handling of taxpayer's CDP hearing. The Settlement Officer disclosed the nature and extent of her communications, which she engaged in solely for administrative, ministerial or procedural purposes, such as obtaining documents and information she needed in order to conduct [the] taxpayer's CDP hearing.

Br. for the Appellee at 45-46. We agree.

There is not one iota of evidence in the record to indicate that the Settlement Officer impermissibly communicated with other IRS employees or interested parties. The Settlement Officer exchanged emails with someone in the IRS general counsel's office in an effort to obtain copies of the notices of deficiency that she needed to conduct her review of Appellant's case. The ban on *ex parte* communications is aimed at communications between offices that might actually bias the appeals officer against the taxpayer, not at communications that might help her obtain documents that she is required to obtain. *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, § 1001(a)(4), 112 Stat. 685, 689 (banning "ex parte

communications between appeals officers and other Internal Revenue Service employees to the extent that such communications appear to compromise the independence of the appeals officers"). Nothing in the record indicates that the independence of the Settlement Officer was in any way compromised during the CDP hearing.

**2. The Senior Tax Court Judge's Refusal to Recuse Himself from Consideration of Appellant's Appointments Clause Argument**

On February 13, 2012, the Tax Court entered an order and decision, sustaining the determination of the Office of Appeals to allow collection by levy of Appellant's tax assessments for the years 1999-2002. Order & Decision, *reprinted in* App. 118. On March 13, 2012, Appellant filed a timely motion to vacate the order and decision of the Tax Court. On the same day, Appellant filed a motion to recuse Senior Tax Court Judge Swift from considering his motion to vacate. Appellant contended that the Tax Court lacked jurisdiction to enter its order and decision because Judge Swift was a Senior Judge and, therefore, was not properly appointed under the Appointments Clause of the Constitution, U.S. CONST. art. II, § 2, cl. 2, to perform judicial duties. The Commissioner opposed both vacatur and recusal on the grounds that (1) Appellant was merely repeating arguments that had already been rejected by the Tax Court; (2) Appellant's Appointments Clause challenge was a new argument that could not be raised for the first time in a motion to vacate; and (3) the Appointments Clause argument was meritless. The Tax Court denied both motions "for cause, and for the reasons set forth in [the Commissioner's] objection and response to [Appellant's] motions." Order, *reprinted in* App. 119. We now affirm.

Appellant's motion asserted that the Tax Court could not act through Senior Judge Swift because 26 U.S.C. § 7447(c), which allows for the recall of retired Tax Court judges to act as

Senior Judges, violates the Appointments Clause. Appellant concedes, however, that he did not raise the Appointments Clause issue until after Judge Swift had issued his judgment on behalf of the Tax Court. *See* Reply Br. for the Appellant at 37.

Appellant's claim is untimely. As the IRS notes: "This is a purely legal argument that taxpayer could have raised earlier in the proceeding, but chose not to. For that reason alone, the Tax Court did not abuse its discretion in denying the motion to vacate." Br. for the Appellee at 56 (citing *Cerand & Co., Inc. v. Comm'r*, 254 F.3d 258, 260 (D.C. Cir. 2001)). We agree. Because Appellant did not timely raise his Appointments Clause argument with the Tax Court, we "shall not pass upon [Appellant's] argument." *Cerand & Co.*, 254 F.3d at 260.

Furthermore, we have no reason to be concerned that the actions of Senior Judge Swift were *ultra vires*. Under 26 U.S.C. § 7447(c), Senior Judges are empowered "to perform such judicial duties" as are requested by the Chief Judge. It is undisputed that Senior Judge Swift was properly recalled to duty by the Chief Judge of the Tax Court. The statute further provides that "[a]ny act, or failure to act, by an individual performing judicial duties pursuant to this subsection shall have the same force and effect" as an act taken by an active judge on the Tax Court. *Id*. These statutory authorizations are plainly constitutional. *See Shoemaker v. United States*, 147 U.S. 282, 301 (1893) ("It cannot be doubted, and it has frequently been the case, that congress may increase the power and duties of an existing office without thereby rendering it necessary that the incumbent should be again nominated and appointed.").

### 3. The Tax Court's Dismissal of Appellant's Tax Liability for the Year 2003 as Moot

In the proceedings before the Tax Court, the IRS moved to dismiss as moot the claim relating to the levy to collect income

tax liability for the year 2003. The IRS pointed out that "[t]he assessment for taxable year 2003 is based on a failure to timely petition from a statutory notice of deficiency, but this entry on petitioner's tax account is incorrect." Mot. to Dismiss on Ground of Mootness at 2, *reprinted in* App. 5. The IRS explained that, because of this error, "[t]he assessment for tax year 2003 has been abated" and the Commissioner was no longer pursuing a levy with respect to year 2003. *Id.* at 3, *reprinted in* App. 6. The IRS thus moved to have the 2003 claim dismissed as moot, and the Tax Court granted the motion.

Appellant argues that the Tax Court "erred by mooting and striking 2003 from the case" because the year 2003 assessment "remained relevant to resolving the case's outcome." Br. for the Appellant at 72. Appellant is mistaken. With no levy being placed upon his property for the 2003 year, there was no actual case in controversy regarding an appeal of such a levy action. There was no appropriate course of action for the Tax Court to take but to dismiss as moot the dispute as to the year 2003 tax assessment.

### 4. Appellant's Challenge to the Notice of Determination Imposing the Levy

Finally, Appellant argues that the Tax Court erred in upholding the levy determination after the 2003 tax assessment was no longer under consideration. Appellant suggests that the Settlement Officer "may not have" found that a levy was proper if she had excluded the 2003 tax year in her initial determination. Br. for the Appellant at 71. Appellant thus appears to suggest that the Tax Court erred in deciding the case on a record that was different from the one that was relied upon by the Settlement Officer. *Id.* at 72.

In support of this claim, Appellant cites *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943), for the proposition that the

Tax Court should not have based its decision on factors other than those considered by the Settlement Officer in the first instance. Under the *Chenery* doctrine, a reviewing court must confine itself to the grounds upon which the record discloses that the agency's action was based. *Id.* at 87–88. "If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Appellant's argument fails for two reasons: First, the claim is based on the false premise that the Tax Court reviewed a record that was different from the record considered by the Settlement Officer. Second, the claim is not properly before this court because it was never raised with the Tax Court in the first instance. Our *de novo* review of the record confirms that the Tax Court did not err in granting summary judgment for the IRS.

After the Tax Court dismissed the year 2003 claim as moot, the IRS filed a motion for summary judgment asserting that the underlying tax liabilities for the years 1999-2002 were not at issue and that the IRS Appeals Office had not abused its discretion in determining that Appellant was subject to levy. Resp't's Mot. for Summ. J. at 9-13, *Byers v. Comm'r*, No. 3032-10L (T.C. May 19, 2011). The IRS further asserted that Appellant had failed to offer any viable collection alternatives; that Appellant had failed to submit any information necessary to allow a collection alternative to be considered by the Settlement Officer; and that, pursuant to the requirements of 26 U.S.C. § 6330, all of the legal and administrative prerequisites to levy had been met. *Id.* at 13-15. The IRS's motion for summary judgment also included a declaration from the Settlement Officer stating that "[t]he reasons for, and the facts underlying [her] determination are found in the Notice of Determination, dated November 24, 2009" and that those reasons were applicable "with respect to petitioner's unpaid income tax liabilities for tax years 1999, 2000, 2001, and 2002." Am. Decl. of Lupe Silva at 1, *Byers v. Comm'r*, No.

3032-10L (T.C. May 25, 2011). In other words, the final Amended Declaration of the Settlement Officer did not rely on the 2003 tax year.

Appellant's response to the motion for summary judgment, Pet'r's Notice of Objection, *Byers v. Comm'r*, No. 3032-10L (T.C. Dec. 27, 2011), did not raise any genuine disputes with respect to any of the material facts asserted by the IRS. And, importantly, Appellant's opposition to the motion for summary judgment did not challenge the admissibility of the Amended Declaration of the Settlement Officer, nor did it claim that the record before the Tax Court was different from the one that was relied upon by the Settlement Officer with respect to taxable year 2003.

The Tax Court granted the motion for summary judgment, holding that the IRS had not abused its discretion in allowing the levy against Appellant to proceed. *Byers*, 103 T.C.M. (CCH) at 1170. We agree with the Tax Court that summary judgment in favor of the IRS is clearly supported by the record.

As noted above, following the Tax Court's issuance of a summary judgment in favor of the IRS, Appellant filed a motion to vacate the Tax Court's orders and decision. In his motion to vacate, Appellant did not assert the *Chenery* argument that he has raised with this court. Mot. to Vacate Orders and Decision, *Byers v. Comm'r*, No. 3032-10L (T.C. Mar. 13, 2012). The first time that Appellant raised this argument as to taxable year 2003 was in his brief to this court. Appellant does not suggest that the record before the Tax Court was inadequate to support a levy. This is unsurprising because, even without considering the year 2003 tax assessment, Appellant admittedly owed more than $120,000 in back taxes and had expressed no intent to pay them.

It is unnecessary to tarry over Appellant's *Chenery* argument. We hold that, on the record at hand, we need not

reach the *Chenery* question that has been raised by Appellant because it comes too late. "It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984); *see also Breeden v. Novartis Pharm. Corp.*, 646 F.3d 43, 56 (D.C. Cir. 2011) (holding argument raised for first time on appeal forfeited); *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 21 (D.C. Cir. 2010) (same). This principle controls here because Appellant never pursued his claim with the Tax Court in the first instance, although he had at least two opportunities to do so. We have discretion to consider untimely arguments if "exceptional circumstances" are present, *Flynn v. Comm'r*, 269 F.3d 1064, 1068–69 (D.C. Cir. 2001), but we find no such circumstances in this case.

In sum, we have no grounds to overturn the IRS's levy determination in this case.

### III. CONCLUSION

For the foregoing reasons, we affirm the decisions of the United States Tax Court.